

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

May 2, 2022

**BY ECF AND EMAIL**

The Honorable Analisa Torres
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

     Re:    *United States* v. *Naim Ismail*, 18 Cr. 791 (AT)

Dear Judge Torres:

The Government respectfully submits this letter in response to the letter by Naim Ismail ("Ismail" or "the defendant") dated April 20, 2022, consistent with the Court's April 25, 2022 order. While the defendant has withdrawn his objection to Paragraph 41 of the Presentence Investigation Report dated October 1, 2021 ("PSR"), the defendant persists in several objections to the PSR. As set forth in greater detail below, the defendant's remaining objections largely challenge the inferences the Government is suggesting the Court draw from certain facts not in dispute, rather than factual disputes that might give rise to a hearing. In an effort to streamline the issues for the Court's consideration, and aid the Court in determining whether a hearing would assist the Court at sentencing, the Government sets forth below the issues in dispute, and explains whether evidence or testimony exists that further supports the Government's position such that a hearing might be beneficial for the Court.

     **Paragraph 14**

The defendant's core objection to Paragraph 14 of the PSR appears to arise from the Government's argument that the defendant derived "personal gain" from his crime. In support of its claim, the Government has pointed to the fact that between July 2007 and February 2011, the defendant received more than $1.88 million from First AFG Financial ("AFG") and related entities. The defendant is correct that the checks and cash personally directed to the defendant amounted to more than $700,000, and $1.88 million figure includes payments to the defendant's brother and co-conspirator, Mostafa Ismail, as well as cash withdrawals that do not explicitly identify whether Naim or Mostafa Ismail received the funds. The defendant does not otherwise dispute the calculation, but instead argues that because the notes fields for certain payments reflect they were "Official Checks," or for other business purposes, the expenses were for legitimate business purposes rather than his personal use. It remains unclear to the Government what was

Hon. Analisa Torres                                                                                        Page 2
May 2, 2022

"Official" about the checks the defendant wrote himself, or why the defendant made the payments to himself instead of paying supposedly legitimate third parties directly from the AFG accounts. At this point, the Government has no way of ascertaining how the defendant spent the funds he paid himself, but would urge the Court to be skeptical of the defendant's unsupported claims, particularly in light of the fact that the defendant could have paid third parties directly from the AFG accounts without first paying the funds to himself, and the fact that there are no records the Government is aware of to support the defendant's self-serving claims. Moreover, the defendant's claims are further belied by the fact that the defendant falsely represented to individual investors that their investment funds would be used to improve real estate and there is no evidentiary support that such improvements were ever made.

The Government does not dispute the claims by the members of the defendant's family that they lost their investments with the defendant. As a result of the foregoing, the Government does not anticipate it would have additional evidence to offer on these points, and respectfully submits that the forensic accounting analysis supports the Government's view that the defendant and his co-conspirator personally gained from the fraud scheme.[1]

**Paragraph 15**

The defendant continues to protest that his fraudulent conduct did not constitute a Ponzi scheme, yet the evidence makes clear that he repeatedly induced victims to "invest" funds for a stated purpose, and then used significant portions of these funds to pay the purported returns-on-investments to other victims. For example, the Government's analysis of the AFG bank accounts has revealed that, on or about March 24, 2008, AFG received a $300,000 deposit from ██████ ████████ a victim in this case, and between March 25, 2008 and March 31, 2008, ██████ ████████████████, other victims in this case, invested approximately $453,000 with AFG, for a total of just over $753,000. In the weeks that followed, Ismail distributed these funds to other investors as interest payments, including to ███████████████████████████████████. While the April 2008 time-period provides a good example of the defendant making Ponzi payments to certain individual investors from the principal invested by others, there are other examples, including in July 2008, December 2008, November 2009, and May 2010.

The Government has produced in discovery the underlying bank records containing these transactions, as well as the schedules prepared by the Government's forensic accountants that lay out the individual transactions in spreadsheets for counsel to analyze. The Government has also produced to the defendant the witness statements of those victims interviewed by the Government, making clear that the individuals listed above are victim investors in this case. In response to the defendant's objections to the PSR, the Government pointed the defendant to the April 2008 time-period as an example, and affirmed the underlying forensic analysis had been produced in discovery. It is therefore unclear how the defendant can persist in his insistence that the Government's calculation is "not supported with any evidence."

---

[1] At the Court's request, the Government can provide the work product of its forensic accountants, or can make one or more such witnesses available at a *Fatico* hearing.

Hon. Analisa Torres                                                                        Page 3
May 2, 2022

The defendant nevertheless continues to take issue with the term "Ponzi scheme," arguing that what was originally a legitimate business model crumbled during the great recession, prompting the defendant to use certain investors' moneys to pay other investors. That is the literal definition of a Ponzi scheme. The defendant repeatedly induced certain victims to give him money at promised rates of return; frequently used those funds to pay-down other victims' purported interest payments; and kept much of the funds for himself and his associates. The defendant does not and has not meaningfully countered the underlying accounting records or the facts set forth therein supporting the Government's claims regarding the source of victim interest payments.

The defendant further objects to the Government's claim that the defendant paid himself approximately $49,000 in or about April 2008, noting that during this month the defendant only withdrew $29,500 in funds. This is correct; however, a minimal expansion of this time frame – from March 24, 2008 to May 1, 2008 – reveals that Ismail paid himself in cash or checks an amount totaling $53,525. The defendant's arguments about use of funds should be rejected for the same reasons as those set forth with respect to paragraph 15.

### Paragraph 16

The parties' dispute with respect to paragraph 16 of the PSR appears to arise from a dispute concerning precisely how the defendant used fraudulent deeds of trust to secure investments from individual investors with AFG. In summary, the Government's investigation has revealed that, primarily in 2007 and 2008, the defendant and his brother Mostafa Ismail engaged in a series of fraudulent deed of trust assignments designed to convince victim investors, including ███████ ███████ and others, that their investments were secured by interest in valuable real property. Because the defendant's false representations changed over time, including with respect to which deed of trust secured which investment, as well as the value of the underlying property, it is difficult to succinctly summarize the defendant's use of these deeds of trust. The Government has provided the underlying documents to defense counsel in discovery, and has responded to specific questions in an effort to resolve the defendant's objection. But, because the defendant has pleaded guilty to wire fraud, and because he has admitted that his crime involved defrauding more than 10 victims, the Government views the details of the deed of trust scheme to be peripheral to the core issues at sentencing, and has not focused on those details in its submission or in its discussions with Probation. Nevertheless, to the extent the Court believes that a factual resolution of this sub-issue is necessary before it can impose an appropriate sentence, the Government is of course prepared to submit witness testimony and documentary evidence demonstrating precisely how the defendant used deeds of trust to further his fraud scheme.

### Paragraph 23

As the Government set forth in its submission, the $15 million figure represents funds the defendant received from investor victims under fraudulent pretenses as part of his scheme. In support of this figure, the Government provided the defendant with the forensic accounting schedules showing funds in and out for each investor victim, the contents of which were discussed at length in the course of plea negotiations. Because the defendant paid certain victims back some or all of their principal investment, the total loss to these victims was somewhat less than their $15 million in investments, and the defendant is only obligated to pay $11,260,496.76 in restitution to

Hon. Analisa Torres                                                                                     Page 4
May 2, 2022

make those victims whole.  The defendant's remaining arguments relating to assets later recovered by victims that sued the defendant are unsupported and contravene the plea agreement.

### Paragraph 24

The Government is prepared to address any questions the Court may have with respect to this objection.

### Paragraph 41

The defendant has withdrawn his objection to paragraph 41.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By:  _____/s/_____
     Kiersten A. Fletcher
     Jonathan E. Rebold
     Assistant United States Attorneys
     (212) 637-2238/-2512

cc:  Laura Marran, Esq. (via ECF)